Argued and submitted March 19, resubmitted in banc
October 6, reversed and remanded for a new trial October 13,
reconsideration denied December 17, 1980,
petition for review allowed January 13, 1981

STATE OF OREGON,
*Respondent,*

*v.*

JACKSON CANTWELL HOLT,
*Appellant.*

(No. CR 79-0707, CA 15950)

617 P2d 962

John Henry Hingson, III, Oregon City, argued the cause and filed the brief for appellant.

James C. Rhodes, Assistant Attorney General, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Reversed and remanded for a new trial.

## WARREN, J.

Defendant appeals from a judgment on his conviction of public indecency after trial to the court. ORS 163.465(1)(c).[1] He assigns as error the trial court's denial of his motion to suppress evidence obtained from a warrantless police surveillance of a public restroom.

Approximately two years prior to defendant's arrest, the police began clandestine surveillance of a men's public restroom at a rest area along an interstate highway. A screened vent was cut in a wall common to the men's restroom and an adjacent storage room. From this vantage point, an officer, standing on a ladder in the storage room, could view the toilet stalls below. Defendant's arresting officer testified that he had made over 130 arrests at this restroom in less than three months of surveillance. No application for a search warrant was ever made.

The restroom itself contained two doorless toilet stalls separated by a partition. A person standing in front of either stall would be able to see the occupant. The partition between the two stalls was perforated by two holes approximately 1/2 inch in diameter which were apparently caused by moving the location of the tissue dispenser.

Looking through the storage room vent, the arresting officer observed defendant enter the restroom, walk past the urinals, and bend over to look under the toilet stalls. At that time, both stalls were occupied — one by an unidentified male and the other by an undercover police officer participating in the surveillance. Finding both stalls occupied, defendant

---

[1] ORS 163.465(1)(c):

"(1) A person commits the crime of public indecency if while in, or in view of, a public place he performs:

"* * * * *

"(c) An act of exposing his genitals with the intent of arousing the sexual desire of himself or another person."

left the restroom area. After the other two men departed, defendant reentered and sat on a toilet. Observing defendant reenter the restroom, Officer Gable left the storage area and also entered the restroom. He walked by the stall occupied by defendant and sat down on a toilet in the adjacent stall. Looking through a hole in the partition, the officer observed the defendant sitting on the toilet masturbating. Because of what he observed, the officer walked to the front of defendant's stall. There he observed him standing masturbating while facing the open end of the stall. Defendant was arrested and charged with public indecency.

There were three stages of police surveillance. The first was from the storage room vent; the second was through the holes in the partition of the adjacent toilet stall; and the third was from the area in front of defendant's stall. The threshold question is whether these police observations constitute searches within the confines of the Fourth Amendment. Since *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), it has become clear that they do.

In *Katz,* the defendant was convicted of transmitting wagering information by telephone in violation of federal law. At trial, the defendant contended unsuccessfully that evidence obtained by means of an electronic listenening device attached to the outside of the telephone booth was a search which violated his Fourth Amendment rights. The United States Supreme Court noted that

"* * * the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations omitted.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. [Citations omitted.]

"The government stresses the fact that the telephone booth from which the petitioner made his calls was constructed partially of glass so that he was as visible after he entered it as he would have been if he had remained outside. But what he sought to exclude when he entered the booth was not the intruding eye

— it was the uninvited ear. He did not shed his right to do so simply because he made his calls from a place where he might be seen. * * *

"* * * * *

"* * * The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment. * * *" 389 US at 351-53.

In a frequently quoted passage from his concurring opinion in *Katz,* Justice Harlan noted that the protection of the Fourth Amendment against unreasonable searches and seizures involves two elements:

"* * * [F]irst, that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' * * *" 389 US at 361.

■ An individual's "reasonable expectation of privacy" is therefore the Fourth Amendment touchstone for determining one's right to be free from unreasonable governmental intrusions.

In applying the reasoning of *Katz,* cases similar on their facts to the one before us have concluded that warrantless clandestine surveillance of a restroom constitutes a search in violation of the protection afforded by the Fourth Amendment. *See, e.g., Kroehler v. Scott,* 391 F Supp 1114 (E.D. Pa. 1975); *People v. Triggs,* 8 Cal 3d 884, 106 Cal Rptr 408, 506 P2d 232 (1973); *Bielicki v. Superior Court,* 57 Cal 2d 602, 21 Cal Rptr 552, 371 P2d 288 (1962); *State v. Bryant,* 287 Minn 205, 177 NW 2d 800 (1970).[2]

---

[2] In his discussion of clandestine surveillance of public restrooms, Professor LaFave states in his treatise on the Fourth Amendment:

"* * * At least since the *Katz* decision, it is clear beyond question that such surveillance into a closed rest room stall constitutes a Fourth Amendment search.

"* * * * *

"*Katz,* properly viewed, extends the limitations of the Fourth Amendment to those forms of police surveillance which cannot be

■ The state would have us view the absence of a door on the toilet stall as foreclosing an individual's reasonable expectation of privacy from clandestine surveillance. *Buchanan v. State,* 471 SW 2d 401 (Tex Crim 1971), so held, but we do not find it persuasive. While the occupant of a doorless toilet stall in a public restroom cannot reasonably expect privacy from the gaze of a person standing in front of his stall, he would not expect a hidden agent of the state to be spying on him from some concealed vantage point. Such occupant is entitled to hold a subjective expectancy of privacy to the limited extent that the design of the facility affords him. *Brown v. State,* 3 Md App 90, 238 A2d 147 (1968).

The second point in Justice Harlan's test as to what searches are subject to Fourth Amendment protection is that the expectation of privacy be one "that society is prepared to recognize as reasonable."

As aptly framed by Professor LaFave in his treatise on the Fourth Amendment:

"* * * The issue is not whether the resort to that practice in the *particular case at hand,* given either the grounds which the police had in advance for engaging in the practice or the hindsight knowledge that the practice was directed toward a person engaged in criminal activity, is particularly offensive. Rather, the matter must be viewed from a much broader perspective. *It must be asked whether permitting the police regularly to engage in that type of practice,* limited by nothing 'more than self restraint by law enforcement officials' *requires the 'people' to which the Fourth Amendment refers to give 'up too much freedom as the cost of privacy.'* That is, the fundamental inquiry is whether that practice, if not subjected to Fourth Amendment restraints, would be intolerable because it would either encroach too much

'permitted to go unregulated by constitutional restraints.' Clandestine peeping into rest rooms is surely one type of surveillance which cannot be left to the whim of the police, whether there are doors on the stalls or not, and thus [ *People v.] Triggs* rather than *Buchanan [v. State]* represents the better view. * * *" W. LaFave, *Search and Seizure,* § 2.4 (c)(1978).

upon the 'sense of security' or impose unreasonable burdens upon those who wished to maintain that security." W. LaFave, *Search and Seizure,* § 2.1 (1978). (Emphasis supplied.)

In balancing the legitimate need to enforce the law and the difficulty encountered by law enforcement officials in doing so against what we believe society regards as reasonable, we cannot ignore that the method used here was not selective and affected persons using the facilities for proper purposes as well as those who used them as defendant did.

■ We believe that while defendant could not entertain any expectation of privacy from observation from the front of the open toilet stall, he could reasonably expect, and society would recognize that expectation as reasonable, that he would not be subjected to surveillance of his use of the toilet facilities properly, or otherwise, from a hidden vantage point. Because that expectation is both subjectively and objectively reasonable, it is entitled to the protection of the Fourth Amendment.

We are persuaded that the reasoning in *People v. Triggs, supra,* represents the proper application of the Fourth Amendment to the facts of this case. In *Triggs,* as in the present case, the state contended that, because the toilet stall had no door, defendant had no reasonable expectation of privacy and that therefore the police officer's observation of defendant from a hidden place did not constitute a "search." Defendant's motion to suppress the officer's testimony as "the intangible fruit of an illegal search" was denied. On appeal from the resulting conviction, the Supreme Court of California reversed. It noted that in *Britt v. Superior Court,* 58 Cal 2d 469, 24 Cal Rptr 849, 374 P2d 817 (1962), and *Bielicki v. Superior Court, supra,* it had previously rejected arguments that clandestine observations of public toilet stalls were not searches where the places from which the observations were made were created for purposes other than surveillance or where the stall was open to observation from areas accessible to the public.

The court stated:

"* * * [T]he People here urge us to hold that clandestine observation of doorless stalls in a public restroom is not a 'search', and hence is not subject to the Fourth Amendment's prohibitions of unreasonable searches. This would permit the police to make a routine practice to observe from hidden vantage points the restroom conduct of the public whenever such activities do not occur within fully enclosed toilet stalls and would permit spying on the "innocent and guilty alike." Most persons using public restrooms have no reason to suspect that a hidden agent of the state will observe them. The expectation of privacy a person has when he enters a restroom is reasonable and is not diminished or destroyed because the toilet stall being used lacks a door.

"* * * * *

"* * * In seeking to honor reasonable expectations of privacy through our application of search and seizure law, we must consider the expectations of the innocent as well as the guilty. When innocent people are subjected to illegal searches — including when, as here, they do not even know their private parts and bodily functions are being exposed to the gaze of the law — their rights are violated even though such searches turn up no evidence of guilt. Save through the deterrent effect of the exclusionary rule, there is little court's can do to protect the constitutional right of persons innocent of any crime to be free from unreasonable searches." 506 P2d at 236-38.

Concluding that the activities of the police in *Triggs* constituted a search within the purview of the Fourth Amendment, the California Supreme Court held that because the evidence obtained in the warrantless search was not based on probable cause, it should have been suppressed.

■ Applying this analysis to the case before us, as to the first stage of surveillance, the officer's observation of defendant from the storage room vent was clearly a search. That search is not really at issue here because it revealed no incriminating evidence.[3]

---

[3] The state did not contend, in the event that we determine the first stage of surveillance to be a Fourth Amendment search, that there was

■ The second stage of surveillance, however, consisting of the officer peering through a hole in the partition of the adjacent toilet stall, was similarly a search within the purview of the Fourth Amendment. The officer's view of defendant's activities constituted a search and resulted in a seizure of incriminating evidence.

■ Having concluded that this second stage of the observation was a search and seizure, we must determine its legality. Subject only to a few well-guarded exceptions, warrantless searches and seizures are per se unreasonable, *State v. Florance,* 270 Or 169, 177, 527 P2d 1202 (1974), and the burden of proving the reasonableness of the search is on the state, ORS 133.693(4).

■■ In order to justify a warrantless search, the state must prove that there was probable cause to believe that the search would disclose incriminating evidence and that exigent circumstances were present which outweighed the need for an independent judicial determination of probable cause. *State v. Basler,* 24 Or App 723, 727, 546 P2d 1084 (1976). Prior to the second observation, the officer had no cause to suspect defendant of criminal conduct. Defendant's behavior was susceptible to an innocent explanation. Thus, the officer did not have probable cause to justify a search. Rather, this was a general nonselective exploratory search affecting both the innocent and the guilty alike which cannot withstand constitutional attack. As the Supreme Court stated in *Katz,* 389 US at 357-59.

"* * *[T]he Constitution requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police' * * *.
"* * * * *
"And bypassing a neutral predetermination of the *scope* of a search leaves individuals secure from

probable cause and exigent circumstances present to justify a general, clandestine search without a warrant of all occupants of the toilet stalls in this particular restroom on the date in question. It is difficult to imagine any exigency in view of the fact that such surveillance had been going on for approximately two years.

Fourth Amendment violations 'only in the discretion of the police.' * * *

"* * * Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures. * * *"

 The third stage of surveillance was from the area in front of the doorless stall. Even though this occurred in a place where the police had a right to be, we cannot ignore officer Gable's testimony at the suppression hearing that he was there at the critical time only because of what he observed through the hole in the partition.[4] Consequently, the evidence obtained was the product of the initial illegal search.[5] *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

---

[4] We note that under circumstances where the evidence is not tainted by a prior illegality, an observation by an officer in front of a doorless toilet stall would not be a Fourth Amendment search under our analysis of the "reasonable expectation of privacy" test set forth in *Katz.* Moreover, such an observation could be found not to constitute a search under a (non - *Coolidge* ) plain view analysis. *See* W. LaFave, *Search and Seizure:* Plain View, Smell and Hearing; Aiding the Senses, § 2.2(a) (1978) (distinguishing the situation in which a search has occurred and the plain view doctrine of *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), is applied to justify the subsequent warrantless seizure of evidence from the situation in which there has been no search because the vantage point from which the "plain view" observation was made was not within a constitutionally protected area).

[5] Although not briefed or argued by the State on appeal, we have considered the "inevitable discovery" exception to the "fruit-of-the-poisonous-tree" doctrine and find it inapplicable to this case. In *Wong Sun v. United States,* 9 L Ed 2d at 455, the Supreme Court said that the "fruit of the poisonous tree" doctrine

"* * * has no application because the Government learned of the evidence 'from an independent source,' * * * [or] the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' * * * [T]he * * * question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Marguire, Evidence of Guilt, 221 (1959). * * *"

In the present case, the challenged evidence was not obtained by means sufficiently distinguishable from the initial illegality so as to be purged of the primary taint. There was no independent source, nor any attenuation which would dissipate the taint.

Because the evidence that led to defendant's conviction was illegally seized, the judgment must be reversed.[6]

Reversed and remanded for a new trial.

**GILLETTE, J.,** concurring.

I join in the majority opinion, although I suggest that, because the police surveillance of defendant *inside* began because of the police activity *outside,* all that followed that original police activity may have been subject to suppression. However, I do not believe the dissent should pass without comment.

One's *objective* expectation of privacy is a function of where one is. Inside a castle, the expectation is great; inside a doorless toilet stall, it is minimal. But, even in the latter case, it exists.

I cannot tell whether the dissent accepts this self-evident proposition or not. Its statement that "[w]hat the officer saw from the adjacent stall * * *

---

Moreover, the doctrine of "inevitable discovery" is not applicable here where the officer testified at the suppression hearing that his presence in front of defendant's toilet stall was because of his previous clandestine searches. Under ORS 133.683:

"If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

The prosecution has not established by a preponderance of the evidence that irrespective of the unlawful search and seizure, this evidence would have inevitably been discovered. To do so, we would have to speculate that had the officer not peered through the hole in the partition he would nevertheless have left the toilet stall he occupied and observed defendant in his unlawful conduct. Such speculation is not permissible. *State v. Paz,* 31 Or App 851, 874, 572 P2d 1036 (1977).

[6] We do not imply that clandestine surveillance of a restroom is *per se* an impermissible method of law enforcement, only that prior to commencement of such surveillance, a search warrant must be obtained.

was no more the product of a search than the act of an officer looking through the window of a car parked on a public street" suggests that it does not. The fact that the dissent cannot distinguish between a parked car and a public restroom is, in fact, disturbing aside from any considerations of constitutional analysis.

Moving beyond the dissent's obscure handling of the objective expectation of privacy consideration, it is at least clear that the dissent disagrees with the *subjective* side of the majority analysis. The dissent says, "It is impossible for me, on these facts, to believe that this defendant sought to preserve himself or his acts from 'public' view." And, "Even if we were to grant that the peeking from the adjoining stall was an unlawful violation of privacy * * *, I would not in this case hold that defendant's activity in plain, public *and intended* view was subjected to a 'search.'" (Emphasis in original).

The problem with the dissent's analysis on this point is that the defendant was carrying on his activities *in the stall.* If he did not both objectively and subjectively seek *some* privacy, he could have conducted his activity outside the restroom (or in a parked car). That small expectation of privacy was invaded by the officer's peering from the next stall. All that occurred afterward followed from that one impermissible act of searching.

I concur with the majority.

Buttler, J., joins in this opinion.

**JOSEPH, J.,** dissenting.

I dissent because the majority is wrong in several respects.

1. The "threshhold question" is, indeed, "whether these police observations constitute searches within the confines of the Fourth Amendment." The surveillance from the storage room produced no evidence, so it is irrelevant. What the officer saw from the adjacent stall or from in front of the defendant's place (and from in front of the defendant for that matter)

was no more the product of a search than the act of an officer looking through the window of a car parked on a public street.

At the heart of the rationale of *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), is the idea that what the Fourth Amendment protects is the right of people to keep from the public that which they seek to preserve as private. It is impossible for me, on these facts, to believe that this defendant sought to preserve himself or his acts from "public" view.

3. After quoting Justice Harlan's language, concurring in *Katz,* the majority ignores what he said: "***[F]irst that a person have exhibited an actual (subjective) expectation of privacy, etc." Whatever defendant was exhibiting, it was not an expectation of privacy.

4. Once we acknowledge that the observation from the storeroom is irrelevant, the quotation from Professor LaFave loses most of its legal *and* ethical force. It seems inescapable to me that the officer saw defendant's conduct from places he had a right to be and to look, regardless of his motivation or previous conduct.

5. The opinion suggests that we should consider the fact that this officer had historically observed many other people from his hiding place. Whether or not that was true, and whatever may be the value judgment we might make about that, it is not legally of any force that I can understand.

6. *People v. Triggs,* 8 Cal 3d 884, 106 Cal Rptr 408, 506 P2d 232 (1973), and the prior decisions on which it is based, are mighty weak authorities in this case. The issue there was the admissibility of testimony by an officer about what he saw from a secret hiding place, and the court made the point repeatedly that it was not considering a "plain view" situation. The defendant here moved to suppress all testimony by the officers involved. No other issue has been presented to us.

7. Finally, I do not accept the analysis in footnote 5 about "inevitable discovery," although I would agree that it could really be the toughest and most important issue in the case, especially given the strictures of ORS 133.683 (which the defendant does *not* cite). Even if we were to grant that the peeking from the adjoining stall was an unlawful violation of defendant's constitutionally protected expectation of privacy (which I do *not* grant), I would not in this case hold that defendant's activity in plain, public *and intended* view was subjected to a "search."

I would affirm.

Schwab, C.J., and Warden, J., join in this dissent.