Argued and submitted April 7, reversed July 8, 1981

# STATE OF OREGON,
## *Petitioner,*

*v.*

# JACKSON CANTWELL HOLT,
## *Respondent.*

## (No. CR 79-0707, CA 15950, SC 27449)

630 P2d 854

William F. Gary, Deputy Solicitor General, Salem, argued the cause for petitioner. With him on the petition were James M. Brown, Attorney General, and John R. McCulloch, Jr., Solicitor General, Salem.

John Henry Hingson, III, Oregon City, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

TANZER, J.

Linde, J., concurring opinion.

**TANZER, J.**

Defendant appeals his conviction for public indecency, contending that it was error to deny his motion to suppress evidence of police observation of his conduct in a public restroom. The Court of Appeals agreed and reversed the conviction. We accepted to review the nature of reasonably expected privacy protected by the Fourth Amendment of the United States Constitution and Article I, Section 9, of the Oregon Constitution.[1]

Defendant contended that the observations were unlawful because there was no warrant, no probable cause to search and no exigent circumstances. He also contended that the search was "overbroad." The trial court made these findings:

"IT IS THE FINDING OF THE COURT that the defendant did not manifest a subjective reasonable expectation of privacy.

"THE COURT FURTHER FINDS that it would be unreasonable for anyone using the stall occupied by the defendant to expect that he would not be subject to observation by any other person using the toilet facilities in an ordinary manner."

Based thereon, the court denied the motion. Although the findings were not specific, the facts are not disputed. We accept the historical facts inherent in the ruling which are supported by the evidence. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

## FACTS

Defendant entered a public restroom at a roadside rest area. Unknown to defendant, a police officer was conducting a surveillance of the restroom from a concealed position. The officer was on a stepladder in a locked storage room adjacent to the restroom. He looked through a pre-existing vent hole cut in the wall common to the restroom and the storage area, above the toilet stalls.

The restroom contained two doorless toilet stalls, separated by a partition. It also contained an open area with urinals and wash basins which was separated from

---

[1] Defendant's motion was based upon both constitutional provisions, assuming them to be coextensive. *See, State v. Flores,* 280 Or 273, 573 P2d 965 (1977).

the toilets by the partition which formed the wall of the second stall. The partitions had a few small holes, approximately 1/4 inch in diameter, apparently caused by removing the original tissue dispensers.

'From his vantage point, the officer saw the defendant enter the restroom, walk to the urinal area and bend over to look under the toilet stall partitions. Both stalls were occupied and defendant left the restroom. After the two restroom occupants departed, defendant re-entered and sat on one of the toilets.

Observing defendant re-enter the restroom, the officer left his perch in the storage room and also entered the restroom. He walked by the stall occupied by defendant, made an inconsequential comment of greeting to defendant in passing, and sat down on a toilet in the adjacent stall.

While he was so seated, the officer saw the hole in the partition between him and defendant darken, as if defendant had peered through it into the officer's stall. The officer then looked through the hole and saw defendant seated on the toilet masturbating. While defendant was masturbating, another man entered the urinal area and the officer observed defendant looking through the hole in the partition which separated defendant from the urinals. Because of what he had observed, the officer walked to the front of defendant's stall. There he observed defendant standing and continuing to masturbate.

Defendant was arrested and charged with public indecency in violation of ORS 163.465. After the arrest defendant told the officer that he came to the rest area for sexual gratification, as he was unable to obtain it elsewhere. Using a slang phrase, defendant said that he was seeking a partner for oral sodomy.

The police had been conducting surreptitious surveillance of the men's restroom for approximately two years prior to defendant's arrest but no application for a search warrant was ever made. The officer in this case had made over 130 arrests at this restroom in less than three months of surveillance.

## DISCUSSION

There were three stages of observation: (1) the initial observation from a concealed vantage point, (2) the

observation from the adjoining stall through holes in the partition, and (3) the final observation from in front of defendant's open stall. We shall discuss each, beginning with the last.

## I

■      Historically, a surveillance became a Fourth Amendment search at the point of trespass. With its decision in *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967), the United States Supreme Court no longer limited Fourth Amendment protection to physical premises within a person's ownership, possession or control. It held that the purpose of the Fourth Amendment was to protect against improper official intrusions into a person's reasonable expectation of privacy. Since *Katz,* a surveillance becomes a search when it intrudes into such privacy. In a statement that summarizes their holding and resolves this aspect of this case, the court held that

"*  *  * the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (Citations omitted.) 389 US at 351.

For that reason, the court in *Katz* suppressed evidence of defendant's end of a conversation overheard by means of an electronic device attached to the outside of a public telephone booth used by the defendant.

During the final stage of observation in this case, the officer observed only that which defendant intentionally displayed. Defendant was acting openly in order to interest and engage a partner for sexual activity. There was no search; there was only a plain view observation. Defendant knowingly (indeed, intentionally) exposed himself and his conduct to the public; he did not seek to preserve anything as private. There is nothing constitutionally impermissible about this stage of the officer's observations.

## II

As to the second stage of observation, that made through the holes in the partition, the question again is

whether the observation intruded upon defendant's reasonable expectation of privacy. Justice Harlan explained in his concurring opinion in *Katz* that the concept of a reasonable expectation of privacy is in two parts, subjective and objective:

> "* * * there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus a man's home is, for most purposes, a place he expects privacy, but objects, activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited." 389 US at 361.

Cases cited by the parties and by the Court of Appeals which deal with surreptitious observation of public restroom stalls tend to decide whether an occupant has a reasonable expectation of privacy according to whether there is a door on the stall. *Compare State v. Bryant,* 287 Minn 205, 177 NW2d 800 (1970), with *Buchanan v. State,* 471 SW2d 401 (Tex Crim 1971). *See* LaFave, Search & Seizure 344-347. In our opinion, that distinction is too simple to adequately protect reasonable expectations of privacy held by persons who use public restrooms. As *Katz* made clear, the law may protect a reasonable expectation of less than total privacy, *(i.e.,* in *Katz* an expectation of auditory privacy, but not visual privacy). One who chooses to use a doorless stall may desire total privacy, but he cannot reasonably expect it. Rather, he accepts a limited risk of observation as a consequence of the limitations of the physical structure. He does not necessarily accept or reasonably expect, however, exposure to concealed viewers.

Defendant cites the holding of the California Supreme Court in *People v. Triggs,* 8 Cal 3d 884, 106 Cal Rptr 408, 506 P2d 232 (1973), which was relied upon by the Court of Appeals. That opinion states:

> "* * * Most persons using public rest rooms have no reason to suspect that a hidden agent of the state will observe them. The expectation of privacy a person has when he enters a rest room is reasonable and is not diminished or destroyed because the toilet stall being used lacks doors." 506 P2d at 236.

"The clandestine observation of rest rooms does not fall from the purview of the Fourth Amendment merely through removal of toilet stall doors. * * *" 506 P2d at 237.

Applying that principle, the California court suppressed evidence of observations from a hidden place of criminal conduct which occurred in an open stall. For the same reason, we do not hold that the mere absence of a door on a public toilet stall subjects the occupant to warrantless observation from any vantage point. We need not go as far as the California court, however, because there is another basis for our decision.

██ We hold that the officer's observations were not subject to exclusion because defendant had no actual or subjective expectation of privacy from observation through the holes of the partition. Initially, he peered under the partitions to see if the stalls were occupied. Later, as an occupant of a stall, he apparently looked through the hole into the stall occupied by the officer and then he peered through a hole in the other partition toward a person in the urinal area. Both acts demonstrate he was conscious that he was subject to observation through or under the partitions. Moreover, his open conduct was intended to be observed by potential sexual partners. Thus he had neither an expectation nor even a desire for privacy. To be protected by exclusion, privacy must be something more than a hope that a person to whom one exposes oneself is not a police officer. Thus, we conclude that the observations of the second stage did not intrude upon defendant's expectation of privacy and are therefore not subject to exclusion.

### III

█ Finally, the Court of Appeals held that the lawfulness of the initial observation through the vent need not be determined because no incriminating conduct was seen. We take this as a holding that the error, if any, was harmless. Defendant contends, however, that the lawfulness of the observation is material because the latter observations were the result of the first and, hence, fruit of a poisonous tree. *See, Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963). Instead of determining whether the subsequent observations are an exploitation of the first, we shall take the more direct approach and determine whether the tree is poisonous. We conclude it is not.

Again, the critical question is whether the observations intruded upon defendant's reasonable expectation of privacy. Professor LaFave, after expressing general agreement with *Triggs,* observes:

"It does not follow, of course, that every instance of police observation in a public rest room constitutes a Fourth Amendment search. There is no justified expectation of privacy as to incriminating conduct which occurs in the public area of a rest room rather than inside one of the stalls. * * * " LaFave, *ibid.* at 346.

That conclusion follows from Justice Harlan's statement quoted above that "the expectation must be one that society is prepared to recognize as 'reasonable.' " We find no case contra. Some places by their nature lend reasonableness to an expectation of complete or partial privacy, *e.g.,* one's home, a desk, a telephone booth, a closed toilet stall. Other places do not, e.g., an open field, a city sidewalk, a room open to the public. It would not be reasonable for one to use the public area of a restroom to do things one wishes hidden from the eyes of others. Even if a public place is empty, strangers may enter at any moment. It is the expectation of privacy, not the wish for it, which must be reasonable. To hold that police cannot observe public places from non-obvious vantage points would severely restrict police stake-outs, surveillances and undercover investigation in ways which suit those who desire not to be observed, but which are not necessary for the protection of those who place themselves in a position where they may reasonably expect privacy. Defendant had no reasonable expectation of privacy while in the common area of a public restroom.

## IV

Our discussion above does not address defendant's other ground that the search was "overbroad." His argument is imaginative and far-ranging, but he offers no Fourth Amendment caselaw or other authority directly in point. His contention nevertheless serves to illustrate an analytical problem at the heart of much Fourth Amendment caselaw which is particularly illustrated by our discussion in Part II, supra.

The twofold rationale of *Katz* does not take into account that Fourth Amendment law is both substantive and remedial and that the two are not coextensive. The

Fourth Amendment purports to limit governmental action; the exclusionary rule is applied more narrowly within the scope of individuals' rights of privacy. *United States v. Payner,* 447 US 727, 100 S Ct 2439, 65 L Ed 2d 468 (1980), demonstrates the distinction. There, evidence obtained by burglary of one person's premises was not excluded in the trial of another person. Although the governmental action was substantively unlawful under the Fourth Amendment, the use of the evidence so obtained was not excluded because no expectation of the privacy of the defendant was intruded upon. In *Payner,* as in *Rakas v. Illinois,* 439 US 128, 99 S Ct 421, 58 L Ed 2d 387 (1978), it was held that exclusion protecting that person's privacy which was actually invaded is sufficient to serve the purpose of deterring unlawful official conduct.

Whether certain police conduct is lawful should depend upon objective circumstances, *see State v. Tucker,* 286 Or 485, 595 P2d 1364 (1979), not upon the subjective state of the observed person. The police should not be required to read a suspect's mind to decide whether a prospective search will be lawful. Rather, lawfulness should depend upon information in the knowledge of the police prior to the fact. If the police observe a procession of people in a public restroom, they may never know in advance who expects privacy and who does not, but they can determine objectively whether an expectation of privacy would be reasonable in the circumstances. For these reasons, this defendant's actual intention to display himself has little materiality on the substantive lawfulness of the police peeking at him. Rather, the lawfulness of the observations should depend upon objective considerations which the police determine prior to taking action.

The existence of a defendant's actual expectation of privacy may be material, however, to the applicability of an exclusionary rule. The purpose of exclusion is to deter unlawful police conduct by excluding evidence unlawfully obtained from the person against whom it is to be used. *See, Rakas* and *Payner, supra.* As we said in *State v. Quinn,* 290 Or 383, 623 P2d 630 (1981):

> "* * * We have held that the exclusionary rule of search and seizure should be applied only as broadly as is necessary to accomplish its protective and prophylactic purposes. *State v. Nettles,* 287 Or 131, 597 P2d 1243 (1979). *See*

State v. Scharf, 288 Or 451, 461 n. 10, 605 P2d 690 (1980). The device of excluding trustworthy evidence from the factfinding process in order to serve higher purposes 'is a needed, but grudgingly taken medicament; no more should be swallowed than is needed to combat the disease.' Amsterdam, *Search, Seizure, and Section 2255,* 112 U Pa L R 378, 389 (1964). * * *." 290 Or at 397

It is not necessary for the achievement of the protective and prophylactic purpose of the exclusionary rule to extend its application to an expectation of privacy which never actually existed. The motion to suppress invokes the exclusionary rule. It presents no occasion in this case to formulate or require broader substantive rules regulating police investigative methods.[2] Because there is no basis for exclusion, the motion was properly denied.

We therefore conclude that the District Court order was without error.

Reversed.

**LINDE, J.,** concurring.

In arriving at a disposition of this particular case, Justice Tanzer's opinion for the Court touches only briefly on points that were stated more clearly by the Court of Appeals and that deserve attention if this decision is not to be misunderstood.

The Court of Appeals gave this background:

"Approximately two years prior to defendant's arrest, the police began clandestine surveillance of a men's public restroom at a rest area along an interstate highway. A screened vent was cut in a wall common to the men's restroom and an adjacent storage room. From this vantage point, an officer, standing on a ladder in the storage room, could view the toilet stalls below. Defendant's arresting officer testified that he had made over 130 arrests at this restroom in less than three months of surveillance. No application for a search warrant was ever made."

---

[2] It has been respectably urged that the courts should nevertheless require that the legislative or executive branches promulgate such rules. *See, State v. Greene,* 285 Or 337, 591 P2d 1362 (1979) (specially concurring opinion of Linde, J.), *State v. Tourtillott,* 289 Or 835, 618 P2d 423 (1980) (dissenting opinion of Linde, J.), and Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn L Rev 349 (1974).

*State v. Holt,* 48 Or App 825, 827, 617 P2d 962, 964 (1980). The Court of Appeals correctly tested the legality of this procedure against the rights of privacy of members of the general public using a toilet stall, and it concluded that clandestine police surveillance of such a stall is permissible only with a search warrant. 48 Or App at 830-831, 835, n. 6. This Court expresses no disagreement with that conclusion.

Thus the reversal of the Court of Appeals as to this defendant should not be misunderstood as approving the legality and continued use of the procedure employed by the police. The principle that the legality of a police procedure must be tested as a general proposition with respect to the ordinary citizen is important equally to the police, who are entitled to know what is or is not permissible, and to the rights of the great majority of lawabiding persons. Both the Court of Appeals and this court recite a quotation from a concurring opinion by Justice Harlan in *Katz v. United States,* 389 US 347, 361, 88 S Ct 507, 19 LEd2d 576 (1967). If Justice Harlan is to be singled out as a source of Fourth Amendment analysis, the more important quotation is what he wrote three years later about the government's recital of the "expectations approach in Katz":

> ". . . While these formulations represent an advance over the unsophisticated trespass analysis of the common law, they too have their limitations and can, ultimately, lead to the substitution of words for analysis. The analysis must, in my view, transcend the search for subjective expectations or legal attribution of assumptions of risk. Our expectations are in large part reflections of laws that translate into rules the customs and values of the past and present."

> "Since it is the task of the law to form and project, as well as mirror and reflect, we should not, as judges, merely recite the expectations and risks without examining the desirability of saddling them upon society. The critical question, therefore, is whether under our system of government, as reflected in the Constitution, we should impose on our citizens the risks of the [electronic listener or] observer without at least the protection of a warrant requirement."

*United States v. White,* 401 US 745, 786, 91 S Ct 1122, 28 LEd2d 453, *reh den* 402 US 990, 91 S Ct 1643, 29 LEd2d

156 (1970).[1] Substituting a concealed police officer observing an apparently private toilet stall for the "electronic listener" in *White,* one can hardly attribute to Justice Harlan the view that the legality of police surveillance depends on the subjective expectations of the procession of individual men or women who happen to come into a restroom.

All this case decides is that even if the police surveillance exceeded legal bounds, as the Court of Appeals found, this defendant's conduct left him in no position to demand suppression of the evidence of the particular offense with which he was charged. That offense was "public indecency," one form of which is defined in ORS 163.465(1)(c) as exposing one's genitals in public view with the intent of arousing one's own or another's sexual desire. It presupposes knowledge that one is observed. Whatever the result might have been if the defendant had been prosecuted for some offense observed by the police officer peering through a hole in the toilet wall or ceiling, this offense by definition was a public act, and it was committed after the officer stood in front of the toilet stall, i.e., *after* the search.

Insofar as the Court holds only that the preceding surveillance did not require excluding evidence of *this* offense, by definition directed at the known observer, I concur in the result.

Lent, J. joins in this concurring opinion.

---

[1] *See also* the Supreme Court's recent observation that "if police are to have workable rules, the balancing of the competing interests" (there in a search following a stop) "must in large part be done on a categorical basis—not in an ad hoc, case-by-case fashion by individual police officers." *Michigan v. Summers,* 452 US 692, 101 S Ct 2587, 69 LEd2d 340, 351 n 19 (1981), *quoting Dunaway v. New York,* 442 US 200, 219-220, 99 S Ct 2248, 60 LEd2d 824 (1979) (White, J., concurring.)