788 P.2d 857

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dale D. LIMBERHAND, Defendant–Appellant.**

**No. 17656.**

Court of Appeals of Idaho.

March 14, 1990.

Eisele & Jackson, Coeur d'Alene, for defendant-appellant. Mary E. Schultz, Spokane, Wash., argued.

Jim Jones, Atty. Gen.; Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent. Myrna A.I. Stahman argued.

WALTERS, Chief Judge.

Dale Limberhand appeals from a decision of the district court which reversed the order of a magistrate granting his motion to suppress evidence and dismissing misdemeanor charges against him of sexual exhibition and possession of marijuana. We vacate the district court's decision and remand this case for further proceedings.

Limberhand was arrested for participating in obscene live conduct, I.C. § 18–4104, after an undercover officer observed him masturbating in a closed toilet stall, in a public restroom at a rest area along Interstate 90 in northern Idaho. He was taken by the police to the Kootenai County jail. When Limberhand emptied his pockets in the course of being booked into the jail, a small quantity (less than three ounces) of marijuana was found and seized by the police, giving rise to an additional charge of misdemeanor possession of a controlled substance, I.C. § 37–2732(c). After Limberhand appeared before a magistrate on the charges, he moved to suppress all evidence obtained by the officers, on the ground that the undercover officer's observations of him in the rest stop toilet stall constituted an illegal search in violation of the United States and Idaho Constitutions. Limberhand further maintained that the

marijuana seized during the booking search at the jail should be suppressed as "fruits of the poisonous tree." The magistrate agreed and ordered suppression of the evidence, finding that Limberhand had a reasonable expectation of privacy in an enclosed toilet stall. Once the magistrate had announced his decision to suppress all of the evidence, Limberhand moved to dismiss the charges against him. The state then conceded that it had no evidence with which to proceed on either charge in light of the magistrate's suppression ruling. The magistrate granted Limberhand's motion and dismissed both charges. The state appealed to the district court. The district court reversed the magistrate's determination on the ground that the conduct observed by the police officer was in "plain view" and therefore was not observed by an unconstitutional search. Limberhand then brought this appeal from the district court's decision. See I.A.R. 11(c)(10).

The facts underlying this case were developed at an evidentiary hearing conducted by the magistrate. The magistrate's findings may be summarized as follows. In early June, 1987, the Idaho Department of Law Enforcement and the Idaho State Police conducted an investigation at the eastbound rest area of Interstate 90, near Huetter, Idaho, in Kootenai County, in response to reports of homosexual activity. The investigation involved approximately eight police agents, unmarked police vehicles and an undercover officer wearing a body transmitter. The police obtained no warrant for search or surveillance activity connected with this investigation.

The men's restroom at the Huetter rest area included two enclosed toilet stalls, each provided with doors containing locks. A metal partition separated the stalls. About three feet above the floor level, a hole with a diameter of approximately four inches had been made through the common partition, evidently with a cutting torch. The hole was not an aspect of the design of the stalls and neither the police nor Limberhand had any part in cutting the hole. No evidence was submitted to explain the hole's origin or purpose.

On June 5, 1987, Idaho State Police Officer Komosinski—equipped with a transmitter—operated as an undercover agent at the rest area. Komosinski entered the restroom and found it unoccupied. He noticed the hole in the partition between the two toilet stalls. He plugged the hole with toilet paper—for reasons not disclosed by the record—and left the restroom. A short time thereafter, Komosinski observed an individual, later identified as the defendant, Limberhand, enter the restroom. After waiting one to two minutes, Komosinski reentered the restroom and noted that Limberhand occupied one of the stalls, had closed the door, and that his feet were in an appropriate position for an individual seated on the toilet. Komosinski testified that he had observed no suspicious conduct from Limberhand at any time up to this point.

Komosinski stood outside the adjacent stall and observed that the toilet paper he had placed in the hole was gone. No evidence was submitted regarding how the toilet paper had disappeared. Komosinski then entered the adjacent stall, sat down on the toilet, turned his head and looked through the hole to observe Limberhand's crotch area. Komosinski observed Limberhand already engaged in masturbating. Komosinski testified that he then repositioned himself to better observe Limberhand, in particular, by bending down so he could see Limberhand's face. In accordance with the officers' preconceived plan—established in order to avoid detection of their undercover operation—Komosinski initiated a conversation with Limberhand, for the purpose of luring him away from the restroom area for arrest by inviting Limberhand to accompany him to a nearby motel. Limberhand turned down Komosinski's proposition. As Komosinski left the stall, he told Limberhand that if Limberhand changed his mind, he would be wait-

ing outside. Komosinski again looked into the restroom a short time later and noted Limberhand still in the stall. Limberhand left the restroom shortly thereafter, walked by Komosinski, made no physical or verbal indication that he had changed his mind and got into his vehicle. He remained seated in his vehicle until Komosinski entered his own vehicle to depart from the area. When Komosinski left the rest stop, Limberhand followed. They travelled east on the Interstate at about fifty miles per hour until a uniformed police officer in a patrol car stopped Limberhand before Limberhand could take any exit from the Interstate. The police arrested Limberhand for violation of I.C. § 18–4104.[1] While conducting a search at the jail following Limberhand's arrest, the police found marijuana on Limberhand's person.

Limberhand moved to suppress Komosinski's testimony, arguing that the officer's peering into the restroom stall constituted an unwarranted search in violation of the fourth amendment of the United States Constitution. Consequently, Limberhand maintains the marijuana was obtained illegally as a fruit of an unlawful arrest. The magistrate agreed with Limberhand's argument, holding that there was a reasonable expectation of privacy in a public restroom stall and that a police officer peering through a hole in the stall constituted a search. The magistrate held further that the state has the burden of proving that a warrantless search was reasonable and that, failing to do so, the search was illegal pursuant to the United States and Idaho Constitutions.

Preliminarily, we note the standard of review. We defer to factual findings of the trial court unless they are clearly erroneous. However, we may undertake a free review of the trial court's determination as to whether constitutional requirements

---

1. Limberhand was charged under I.C. § 18–4104 with committing an act of "obscene live conduct in a public place," a misdemeanor. At the conclusion of the hearing on the suppression motion, the prosecutor moved to amend the charge to a violation of I.C. § 18–4105—also a misdemeanor—which prohibits, *inter alia*, exhibition of human genitals or displaying an act of masturbation. The magistrate orally granted the prosecutor's motion on condition that a written complaint be filed. However, no amended charge appears in the record, most likely because the case was diverted into the appellate process as a result of the magistrate's subsequent order suppressing the evidence and dismissing the charges.

have been satisfied in light of the facts found. *State v. Bainbridge,* 117 Idaho 245, 787 P.2d 231 (1990); *State v. Heinen,* 114 Idaho 656, 759 P.2d 947 (Ct.App.1988) (review denied). Here, the facts found by the magistrate are supported by the record and cannot be deemed clearly erroneous. Hence, we are concerned only with questions of law presented on this appeal.

■ The focal point of this case is whether the police conduct constituted a search. The Idaho appellate courts have not defined the scope of privacy interest in a public restroom stall. Limberhand contends an individual maintains a reasonable expectation of privacy in such a location. With regard to expectations of privacy, vis-a-vis warrantless police searches, our Supreme Court recently noted that both the fourth amendment and art. 1, § 17 of the Idaho Constitution are designed to protect a person's legitimate expectation of privacy, "which society is prepared to recognize as 'reasonable.'" *State v. Thompson,* 114 Idaho 746, 749, 760 P.2d 1162, 1165 (1988) *quoting State v. Johnson,* 110 Idaho 516, 523 n. 5, 716 P.2d 1288, 1295 n. 5 (1986); *Rakas v. Illinois,* 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978); *and Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). The test for review of an individual's subjective expectation of privacy has been further characterized by the United States Supreme Court as whether "the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *United States v. Knotts,* 460 U.S. 276, 281, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55 (1983), *quoting Katz,* 389 U.S. at 353, 88 S.Ct. at 512. Accordingly, in this case, we must determine whether Limberhand manifested an actual, subjective expectation of privacy and one which, when viewed objectively, was justified under the circumstances.

Limberhand maintains that he had, and that his conduct reflected, a subjective ex-

pectation of privacy. The record indicates that the door to the stall Limberhand occupied was closed at all relevant times. Furthermore, the position of his feet as observed from outside the stall indicated that he was using the toilet in an appropriate manner. The record does not indicate that Limberhand exhibited conduct inconsistent with a subjective expectation of privacy. From these facts, the magistrate reasonably inferred Limberhand did not desire his conduct to be viewed by the public but was utilizing the features of the stall to prevent exposure.[2] We conclude Limberhand maintained a subjective expectation of privacy.

The state argues that Limberhand's subjective expectation of privacy in a stall with a four-inch hole in the partition is not one society is willing to accept as reasonable. The state correctly points out that the reasonableness of such an expectation depends on the facts of each case. *Wylie v. State,* 164 Ga.App. 174, 296 S.E.2d 743 (1982). It appears that many jurisdictions have ruled on an individual's privacy expectations in public restroom stalls. *See* Annot., *Privacy Expectation in Restroom,* 74 A.L.R.4th 508 (1989).

Many cases turn on the door structure or design of the stall when determining the privacy interest involved. *See e.g., Buchanan v. State,* 471 S.W.2d 401 (Tex. Crim.1971), *cert. denied* 405 U.S. 930, 92 S.Ct. 984, 30 L.Ed.2d 804 (1972); *U.S. v. Lemons,* 697 F.2d 832 (8th Cir.1983); *State v. Holt,* 291 Or. 343, 630 P.2d 854 (1981). However, focusing on the stall design diminishes the underlying intent of the *Katz* decision and the overall protection guaranteed by the fourth amendment. In *Katz,* the Court examined the privacy interests of a public telephone booth and concluded that telephone conversations within a booth are constitutionally protected. The majority opinion in *Katz* states:

> *For the Fourth Amendment protects people, not places.* What a person knowingly exposes to the public, even in his own home or office, is not a subject

---

**2.** The state suggests that the disappearance of the toilet paper from the hole was caused by Limberhand and thus indicated a desire for his conduct to be viewed by the occupant of the next stall. The magistrate chose not to draw this factual inference. We defer to his judgment.

of Fourth Amendment protection ... *But what he seeks to preserve as private even in an area accessible to the public, may be constitutionally protected.* (Citations omitted.) (Emphasis added.)

389 U.S. at 351, 88 S.Ct. at 511. In elucidating how the Court utilized the notion that the fourth amendment "protects people, not places," in *Katz,* Justice Harlan explained:

The point is not that [a telephone] booth is "accessible to the public" at other times ... but that it is a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable.

389 U.S. at 361, 88 S.Ct. at 516. (Harlan, J., concurring.) Thus, it has been determined that the expectation of privacy is generated by the nature of the activity involved rather than by the precise physical characteristics of the stall. *Kroehler v. Scott,* 391 F.Supp. 1114 (E.D.Pa.1975) (determining whether toilet stalls had doors is not a crucially material inquiry). The activities associated with the use of a toilet are private, based on widely accepted social norms. We acknowledge that the privacy interest in a public telephone booth is auditory while the privacy interest generated within a bathroom stall is to be free from visual intrusion. Otherwise we find no constitutional distinction between a public telephone booth and a public restroom stall with regard to the privacy expectation generated within. Regardless of the four-inch hole in the partition, Limberhand's expectation of privacy within the toilet stall is one we believe society would recognize as objectively reasonable.

■ Next we must determine whether the officer's conduct violated Limberhand's expectation of privacy. The state maintains that viewing that which any member of the public may view is not constitutionally protected. The state also notes, correctly, that the fourth amendment precludes *unreasonable* government intrusion into a person's expectation of privacy. *See United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977).

However, the scope of the protection is determined by the privacy interest at stake. *State v. Brown,* 113 Idaho 480, 745 P.2d 1101 (Ct.App.1987) (review denied). It is clear beyond question that, after *Katz,* clandestine or surreptitious surveillance into a closed restroom stall constitutes a fourth amendment search. *See* 1 LAFAVE, SEARCH AND SEIZURE § 2.4(c) at 438 (2nd Ed.1987). *See also People v. Triggs,* 8 Cal.3d 884, 106 Cal.Rptr. 408, 506 P.2d 232 (1973) *disapproved on other grounds, People v. Lilienthal,* 22 Cal.3d 891, 150 Cal.Rptr. 910, 587 P.2d 706 (1978) (holding that a police officer who, without probable cause, entered a plumbing access room of men's restroom in a public park and who there observed prohibited sexual conduct in a doorless stall conducted an illegal search); *Kroehler v. Scott,* 391 F.Supp. 1114 (E.D.Pa.1975); *State v. Casconi,* 94 Or.App. 457, 766 P.2d 397 (1988); *State v. Owczarzak,* 94 Or.App. 500, 766 P.2d 399 (1988) (both based solely on the Oregon Constitution); *State v. Biggar,* 68 Haw. 404, 716 P.2d 493 (1986) (holding that the defendant's act in leaving the stall door ajar by one inch did not eliminate the subjective expectation of privacy and, thus, the policeman's look into the stall was a search); *Brown v. State,* 3 Md.App. 90, 238 A.2d 147 (1968); *People v. Mercado,* 68 N.Y.2d 874, 508 N.Y.S.2d 419, 501 N.E.2d 27 (1986), *cert. denied* 479 U.S. 1095, 107 S.Ct. 1313, 94 L.Ed.2d 166 (1987). *Contra State v. Holt,* 291 Or. 343, 630 P.2d 854 (1981) (defendant's conduct of peering through holes in wall while in the stall indicated to the police officer that there was no expectation of privacy).

Here, we need not intimate any view regarding whether the police engaged in clandestine conduct. Suffice it to say once it is resolved that there is a cognizable expectation of privacy, the invasion of that privacy interest—including a visual one—will be a search subject to constitutional requirements. *People v. Mercado, supra.* In this case, Officer Komosinski's unwarranted act of peering through the hole into the next stall was a search for the purposes of the United States and Idaho Constitutions. Therefore, we conclude that

Limberhand maintained a reasonable expectation of privacy and that Komosinski violated that expectation when he looked into the neighboring stall occupied by Limberhand.

■ As warrantless searches are presumed unreasonable, the state must show its conduct was justified under the circumstances. *State v. Bottelson,* 102 Idaho 90, 625 P.2d 1093 (1981); *State v. Rusho,* 110 Idaho 556, 716 P.2d 1328 (Ct.App.1986). There are certain specific and well delineated exceptions to the warrant requirement. *State v. Woolery,* 116 Idaho 368, 775 P.2d 1210 (1989); *State v. Johnson, supra.* We recognize that circumstances may exist where there may be a diminished expectation of privacy within a toilet stall, *see, e.g., State v. Holt, supra* (during an ongoing investigation, an officer observed an individual peering through small holes in the partition. The officer then looked back through the hole, observed the defendant masturbating, walked to the front of the doorless stall and again observed as the individual continued to masturbate). Under other circumstances, police conduct could be considered reasonable, *see e.g., People v. Mercado, supra,* (airport security officer investigating report of two men in single, closed stall in restroom; heard two low voices conversing in the stall; could see through space between the door and frame of stall that one man was seated on the toilet tank with his feet on the bowl; could see there were no crutches or wheelchair in the stall; ascertained the men were not using the stall for its intended purpose and suspected the men were *engaged in* "drug crime" or "sex crime;" *held,* based on articulated, objective facts and reasonable inferences that may be drawn therefrom, that the officer had probable cause to believe it was more probable than not that criminal activity was taking place inside the stall; officer's conduct in peering over top of partition and observing drug transaction was justified and was not unreasonable under fourth amendment).

■ Here, the state proffers but one argument to justify the officer's warrantless search—the state contends that whatever the officer observed, it was in plain or open view. "Plain view" is not so much an exception to the warrant requirement as it is an exclusion from the requirements of the fourth amendment. If a police officer is where he has a right to be, and he sees something in plain view, the observation is not a search. *State v. Rusho, supra.* This doctrine is applicable when (1) the officer's vantage point is lawfully gained, (2) the incriminating evidence discovered is a byproduct of other permissible police activity, and (3) the incriminating nature of matters viewed are immediately apparent to the officer. *State v. Hocker,* 115 Idaho 544, 768 P.2d 807 (Ct.App.1989). For the purposes of this analysis, it is unnecessary to discuss the applicability of elements one and three. We are concerned only with the second element, that is, whether the evidence was gained as a result of permissible police activity.

■ The Idaho Supreme Court has interpreted the plain view doctrine as not validating the seizure of evidence in plain view, "if the plain view observation had its genesis in a Fourth Amendment violation." *State v. Allgood,* 98 Idaho 525, 527, 567 P.2d 1276, 1278 (1977). We have already stated that Limberhand had a reasonable expectation of privacy in this activity by the nature of his conduct. We have also held that the officer's conduct—peering through the partition hole—intruded upon that privacy interest. If that particular police conduct is impermissible under the fourth amendment, the officer's testimony—regarding his observations of Limberhand's activities—is inadmissible. This analysis is problematic because the exact police conduct urged by the state to be legal under the plain view doctrine is the same conduct that may be determined to be constitutionally impermissible. We choose not to take the incongruous step of utilizing the plain view doctrine to legitimize unconstitutional police conduct. *Allgood, supra.* From the facts found by the magistrate, it is unclear whether the incriminating evidence discovered was a by-product of permissible police activity. Accordingly, we conclude that the state failed to demon-

strate that its conduct was justified under the plain view doctrine.

The state submits that this is an appropriate case to draw a distinction between "plain view" and "open view." It argues that when an officer makes an observation from a non-intrusive vantage point to that which is knowingly exposed to the public, the object is not subject to any reasonable expectation of privacy. *See State v. Kaaheena*, 59 Haw. 23, 575 P.2d 462 (1978); *State v. Seagull*, 95 Wash.2d 898, 632 P.2d 44 (1981). We agree, noting, however, that this distinction begs the first question under the plain view doctrine of whether the officer's vantage point was lawfully gained. Assuming, arguendo, that the open view distinction is legally significant in this case, an officer is only permitted the scope of observation ascribed to a reasonably respectful citizen. *City of Tukwila v. Nalder*, 53 Wash.App. 746, 770 P.2d 670 (1989) (*held* that an officer peering over the top of 4 foot, 5 and 3/4 inch stall was unreasonably intrusive); *State v. Seagull, supra; United States v. Vilhotti*, 323 F.Supp. 425 (S.D.N.Y.1971) *aff'd in part and rev'd in part* 452 F.2d 1186 (2d Cir.1971), *cert. denied* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972).[3]

Clearly, a "reasonably respectful citizen" could not avoid seeing the hole and whatever was on the other side. The permissible scope of the observation would depend on the location of the hole in relation to the citizen's line of sight while using the adjoining stall in a normal way. However, there are two "observations" critical to this case: first, the observation of the "crotch area," and, second, the eye contact with Limberhand, such that Limberhand would know he was being watched (an essential element of either I.C. § 18–4104 or § 18–4105). The magistrate did not make findings as to whether these observations required Officer Komosinski to position

himself to obtain a view not available to a "reasonably respectful citizen."

Accordingly, we vacate the order of the district court reversing the magistrate's suppression and dismissal ruling. We remand the case to the district court with directions to further remand it to the magistrate for additional findings on the question of whether the officer's observation of Limberhand was within a permissible scope as outlined above. Since the state has the burden of proof to show the reasonableness of the warrantless search in this case, if the record is inadequate for the magistrate to make the required findings, then the suppression order should stand.

BURNETT, J., and WESTON, J., Pro Tem., concur.

dential, commercial, inhabited or abandoned—is decisive; it determines the extent of social inhibition on natural curiosity and, inversely, the degree of care required to insure privacy.
323 F.Supp. at 431.

---

**3.** With respect to an officer's activity, the court in *Vilhotti* stated:

[U]nder Katz, an agent is permitted the same license to intrude as a reasonably respectful citizen would take. Therefore, the nature of the premises inspected—e.g. whether resi-