Argued and submitted September 22, reversed and remanded for
new trial December 8, 1980, reconsideration denied January 29,
petition for review denied March 17, 1981 (290 Or 651)

STATE OF OREGON,
*Respondent,*

*v.*

CHARLES DOUGLAS GOUDE,
*Appellant.*

(No. 78 5975, CA 14563)

620 P2d 957

William G. Kelley, Public Defender Services of Lane County, Inc., Eugene, argued the cause and filed the brief for appellant.

John C. Bradley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J. PRO TEMPORE.*

---

*Appointed to Supreme Court December 1, 1980.

## CAMPBELL, J. PRO TEMPORE

Defendant was convicted, after trial by jury, of theft in the first degree. ORS 164.055. On appeal, he assigns as error the trial court's denial of his motion to suppress evidence. We reverse and remand for new trial.

On September 11, 1978, Michael Carrothers, whose car had been stolen a year earlier, notified Detective Delvin Peer of the Eugene Police Department that he, Carrothers, had possibly located a car which was either his old car or at least had parts of his car on it. Carrothers had had special equipment on his car and informed Peer of 14 points of identification. Detective Peer and Carrothers then left the police station and drove to defendant's residence. As they were driving by, they observed a car in the driveway similar in some respects to Carrothers stolen vehicle. Carrothers could not make positive identification. The two men then drove to the district attorney's office, and Peer was told that it would be all right for them to go onto defendant's property to check out the car more closely.

Peer and Carrothers returned to defendant's residence. The car was immobilized because it was up on blocks with the rear wheels removed. Carrothers testified that, from the edge of the property, he could only tell that there were some parts on defendant's car which were like parts on his car, but that he was not close enough to tell they were actually his. The men walked up to the vehicle and inspected it. The inspection consisted of examining the exterior of the car, peering into the interior, and crawling around on hands and knees near the rear of the car to view the rear end, brake line and suspension. There is some dispute whether the men were inside the car. Carrothers was able to identify several parts as having been taken from his stolen car.

At this time, defendant's girlfriend came out of the house to see what was happening. Detective Peer identified himself and asked to speak to the defendant. While waiting, Peer and Carrothers opened the hood of the car to see if any of the engine parts were stolen. They determined that none were. The defendant came out of the house a short time later.

After identifying himself, Detective Peer questioned the defendant about the parts on his car. Peer then asked the defendant if he would consent to a search of a nearby storage shed. The defendant refused. With the defendant accompanying him to the police car, Peer radioed for a backup patrol unit to secure defendant's premises while he obtained a search warrant. The defendant, at this time, consented to a search of the shed. Several automobile parts found in the shed were identified as stolen from Carrothers car. Defendant's vehicle was impounded and the automobile parts were seized.

The only issue presented is whether Detective Peer's initial inspection of defendant's car in the driveway was lawful. The search of the shed and seizure of the vehicle and parts resulted directly from the knowledge obtained by this initial inspection. If the intrusion on the premises or the observations made were unlawful, then the subsequent acts are tainted, and the evidence seized is inadmissible. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed2d 441 (1963); *State v. Corbett,* 15 Or App 470, 416 P2d 487 (1973).

The trial court denied defendant's motion to suppress because it found that the evidence was in plain view. The plain view doctrine has received its most thorough analysis in *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed2d 564 (1971), where the court found the common thread linking all plain view cases to be the inadvertent discovery of incriminating evidence:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 US at 466.

■■ The facts of this case will not support the police intrusion on a theory of "plain view." That doctrine requires both a prior justification for the intrusion and an inadvertent discovery of evidence. There was no prior justification here, because Detective Peer and Carrothers were not present for some "legitimate reason * * * unconnected with a search directed against the accused." The men entered onto defendant's property for the specific purpose of inspecting his car. It follows that the discovery of incriminating evidence also was not inadvertent. The plain view doctrine alone cannot justify the search.

■ The state contends that the initial inspection of the car was not a search subject to constitutional constraints because defendant could not have had a reasonable expectation of privacy in the exterior of his car while it was parked on his driveway. Since *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1976), the existence or absence of Fourth Amendment protection against governmental activity has been determined by examining the accused's expectation of privacy in the place searched or the thing seized. In *State v. Stanton,* 7 Or App 286, 490 P2d 1274 (1971), we approved a twofold test advanced by Justice Harlan in his concurring opinion in *Katz:*

"'* * * [T]here is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable". * * *' 389 US at 361." 7 Or App at 293-294.

We have used this analytical approach in cases which were factually similar to the present case. In *State v. Stanton, supra,* we held that a police officer's trespass on private property to observe marijuana growing in an open field was not an unconstitutional search invalidating a subsequent search and seizure pursuant to a warrant. We found that the defendant had no objectively reasonable expectation of privacy because the property was open to a substantial segment of the public and because defendant had maintained contraband in plain view.

In *State v. Corbett, supra,* we held that a police officer's uninvited presence on a private driveway did not invalidate the officer's inadvertent observation of defendant smoking a marijuana cigarette. We found that the

owner of the premises had no reasonable expectation of privacy in the driveway:

> "* * * In the course of urban life, we have come to expect various members of the public to enter upon such a driveway, e.g., brush salemen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends. Any one of them may be reasonably expected to report observations of criminal activity to the police, *see,* e.g., *State v. Stanton,* supra. If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so. [Footnote omitted.]" 15 Or App 475.

We were careful to state, however, that our holding was not an unqualified approval of any and all police activity conducted on private driveways:

> "We note * * * that the officer was investigating to detail material for an affidavit for a search warrant, not to directly ferret out contraband. The latter intention may affect whether the officer was acting within the scope of the occupant's reasonable expectation and we therefore do not reach that question in this case." 15 Or App at 476.

Finally, in *State v. Crace,* 26 Or App 927, 554 P2d 628 (1976), we held there was nothing improper about a police officer's seizing a spent shell casing which he found on defendant's driveway. The casing had fallen onto the driveway when the defendant showed the officer his rifle and worked the action. Two days later the officer returned to defendant's house to reinterview him. As the officer was walking back down the driveway to his patrol car, he noticed the spent casing was still on the driveway and picked it up. We said:

> "If a person does not have a reasonable expectation of privacy in an area, and a police officer has a legitimate purpose in being in that area, observance of any object in plain view does not constitute a search subject to Fourth Amendment protections." 26 Or App at 930.

*State v. Corbett* and *State v. Crace* are easily distinguishable from the present case. In both cases the officers had some legitimate purpose for being on the premises and inadvertently observed an object or illegal activity in plain view. We have already said that is not the

situation here. The officer was on defendant's property for one reason only—to ferret out stolen property.

■     The more difficult case to distinguish is *State v. Stanton.* There the police officer specifically entered the defendant's premises to corroborate information he received that marijuana was being cultivated in a field. Our decision that constitutional protections were inapplicable was based in part, however, on the nature of the object seen and the fact that it was contraband. *See State v. Fronden,* 285 Or 361, 364, 591 P2d 1374 (1979). The underlying rationale was that it was not reasonable for the defendant to assume that, if he maintained contraband in plain view in a semi-public area, some members of the public would not report it. This case is markedly different. There is nothing inherently or outwardly suspicious about a car parked in a driveway. The defendant here could reasonably expect that people would not be crawling around his car, opening the hood and possibly getting inside to inspect the interior.

■     The state further argues that, "[e]ven if the observations made from the exterior of the car constituted a search subject to Fourth Amendment protections, the search was reasonable and lawful." In *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979), the court set forth the criteria for determining whether a warrantless search is lawful:

> "* * * [A] search of an automobile may be made without a warrant if (1) the officers have probable cause to believe that the vehicle contains contraband, stolen goods, evidence of crime, etc., and (2) * * * there are exigent circumstances present which require that the vehicle be searched without obtaining a warrant. Underlying both of these propositions is the overall principle repeatedly stated by the United States Supreme Court and this court that searches conducted without a warrant are *per se* unreasonable, subject to only a few exceptions. * * *" 285 Or at 340-41.

The court went on to explain that the relevant inquiry was not whether the search was reasonable, but whether it was reasonable to require a warrant be procured. 285 Or at 342-43.

■■  The trial court below specifically found there were no exigent circumstances attending the search. We agree. Exigent circumstances exist if it is likely evidence will have disappeared before officers can secure a warrant. *State v. Greene, supra.* There was no danger here that evidence would disappear because defendant's car was immobilized. Moreover, the items which were suspected to have been stolen were stolen almost a year prior to the investigation. Prior to the search, defendant had no reason to suspect the police were investigating him for the theft, and he therefore had no immediate motive to hide or destroy the evidence. *State v. Olson,* 287 Or 157, 598 P2d 670 (1979).

The court erred in denying defendant's motion to suppress.

Reversed and remanded for new trial.