On remand from Oregon Supreme Court October 2, 1984, reversed and remanded for new trial April 10, reconsideration denied July 12, petition for review denied August 20, 1985 (299 Or 663)

STATE OF OREGON,
*Respondent,*

*v.*

DYLAN E. ROUNDS,
*Appellant.*

(22-253; CA A28504)

698 P2d 71

Stephen J. Williams, Deputy Public Defender, Salem, appeared for appellant. With him was Gary D. Babcock, Public Defender, Salem.

Dave Frohnmayer, Attorney General, Salem, appeared for respondent. With him were James E. Mountain, Jr., Solicitor General, and Michael D. Reynolds, Assistant Attorney General, Salem.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

This case was remanded for further consideration in light of *State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984), and *State v. Perry,* 298 Or 21, 688 P2d 827 (1984). *State v. Rounds,* 298 Or 36, 688 P2d 843 (1984). On our first consideration of this appeal, we affirmed the trial court's denial of defendant's motion to suppress. *State v. Rounds,* 69 Or App 229, 685 P2d 463 (1984). We now conclude that the trial court erred in denying defendant's motion and reverse and remand the case for a new trial.

Defendant was in Garibaldi during the "Garibaldi Days" festival in July, 1982. Defendant went to his grandfather's home, tried the doors[1] and, finding no one home, left his backpack leaning against a woodpile in the carport, which was open on two sides. A neighbor observed that activity and reported it to the sheriff's department, in accordance with defendant's grandfather's instruction to report the presence of strangers when the grandfather was not home.

When the officer arrived, the neighbor again conveyed his observations and described defendant. He also informed the officer that defendant had returned to his backpack at least once after placing it in the carport and had been present about 15 minutes before the officer arrived. The officer then checked all the doors and windows and the grounds and did not find any evidence of attempted forced entry or burglar tools. By that time, two other police officers and the deputy district attorney had arrived. At this point, they "attempted to secure some identification from the backpack [to see] who it belonged to." The backpack was "closed" with a "flap over the top holding it secure." The officers opened the backpack and removed a sleeping bag. Then they noticed and removed from the backpack a cigarette box which lay on top of clothes and other belongings. They opened the cigarette box, despite the officer's acknowledgment that he had "very seldom" found identification inside a cigarette box. Inside this box they saw "some white stickers," which they suspected to be LSD. Elsewhere in the backpack they found

---

[1] Although the officer testified on direct examination that he was told that defendant had tried all the doors, he admitted on cross-examination that the neighbor said that defendant "just tried the front door."

two bank books, one bearing defendant's name. The officers then seized the backpack and obtained a search warrant. A subsequent search of the backpack did not reveal any other incriminating evidence.

Defendant moved to suppress the evidence seized during the initial inspection of his backpack, arguing that both the initial entry into the backpack and the opening of the cigarette box were illegal searches under Article I, section 9, of the Oregon Constitition and the Fourth and Fourteenth Amendments to the United States Constitution.[2] The trial court denied the motion, finding that "defendant did not exhibit an expectation of privacy [in the backpack]; nor did he objectively have one which society should recognize."

The "expectation of privacy" test is derived from Justice Harlan's concurring opinion in *Katz v. United States,* 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967).[3] The test is applied to determine whether there has been a "search" within the meaning of the Fourth Amendment, subject to constitutional restraint. It was developed when police investigatory powers were being strengthened through technological advances, so that the traditional equating of a "search" with a physical trespass to real or personal property was inadequate. In *Katz,* the Supreme Court held that:

---

[2] Article I, section 9, of the Oregon Constitution, provides, in pertinent part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause * * *."

The Fourth Amendment to the U.S. Constitution provides, in pertinent part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *."

Under *State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983), we must consider the state constitutional claim first.

[3] In *Katz v. United States,* 389 US 347, 361, 88 S Ct 507, 19 L Ed 2d 576 (1967), Justice Harlan stated:

"As the Court's opinion states, 'the Fourth Amendment protects people, not places.' The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a 'place.' My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' * * *"

"* * * [t]he Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment. * * *" 389 US at 353.

Oregon courts have applied the *Katz* test as a threshhold question to determine whether government activities constitute a search and seizure within the protection of the Fourth Amendment to the United States Constitution. The cases in which it applied involve areas which do not fit neatly within the constitutional protection of "persons, houses, papers, and effects." *See, e.g., State v. Holt,* 291 Or 343, 630 P2d 854 (1981) (observation in a public restroom held not a search); *State v. Carter/Burton,* 54 Or App 852, 636 P2d 460 (1981) (observation in an open field held an illegal search); *State v. Goude,* 49 Or App 721, 620 P2d 957 (1980), *rev den* 290 Or 651 (1981) (examination of car parked in private driveway held an illegal search). On the other hand, Oregon courts have not felt the need to resort to the test in cases involving personal effects, which are within the express protection of the constitution: luggage, *State v. Perry, supra;* a purse, *State v. Newman,* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982); and a fishing tackle box, *State v. Keller,* 265 Or 622, 510 P2d 568 (1973).

■    Oregon courts have not yet applied the *Katz* "expectation of privacy" test under Article I, section 9, of the Oregon Constitution, and we do not think it necessary to do so in the present case, because this case involves a physical trespass to a personal effect expressly entitled to constitutional protection. The pack was a closed opaque container whose contents were not visible from the outside, and it was used to carry personal effects, as are suitcases and purses. There was no objective basis for the officer reasonably to think it had been abandoned, because it was left closed on private property and the officer knew that defendant had visited it as recently as 15 minutes before the officer's arrival. The facts of this case are a far cry from those of *State v. Crace,* 26 Or App 927, 554 P2d 628 (1976), in which we held that the officer's seizure of a spent shell casing, which lay in plain view in the defendant's driveway for two days after the defendant had ejected it in the officer's presence, was not constitutionally protected.

■ Having concluded that the officers' entry into the backpack to identify its owner was a "search" subject to constititional protection, we must now consider whether the search was "reasonable."[4] We are guided in this determination by the opinions in *State v. Atkinson, supra,* and *State v. Perry, supra.*

The search in *Atkinson* was a police inventory of the contents of an impounded automobile. The Supreme Court held that, for a noncriminal, nonemergency search to be reasonable under the Oregon Constitution, (1) the personal property must lawfully be in police custody, and (2) the search

> "* * * must be conducted pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory. * * *" 298 Or at 10.

A third requirement is that the scope of the search be reasonable in relation to its purpose. That case was remanded for further proceedings addressing those three issues.

*Perry* involved an inventory of luggage belonging to an intoxicated man temporarily in police custody for detoxificaton. The police opened the defendant's suitcase and discovered marijuana. The Supreme Court reversed the defendant's conviction for possession of a controlled substance, holding that it was unreasonable to open the suitcase. Under *State v. Keller, supra,* absent probable cause, the police cannot open a closed container during an inventory of items belonging to a person arrested for a crime. The court in *Perry* held that, because a person in a civil hold situation is entitled to at least as great an expectation of privacy as a person in a criminal case, the search was unreasonable. 298 Or at 28. This court recently applied these decisions in *State v. Ridderbush,* 71 Or App 418, 426, 692 P2d 667 (1984), holding that it is unreasonable for police to open a closed container during an inventory of items belonging to a person in custody on a criminal charge.

---

[4] If the search had been conducted in pursuit of a criminal investigation, it would also be subject to the constitutional probable cause and warrant requirements. *South Dakota v. Opperman,* 428 US 364, 370 n 5, 96 S Ct 3092, 49 L Ed 2d 1000 (1976); *State v. Newman,* 49 Or App 313, 317, 619 P2d 930 (1980), *reversed on other grounds* 292 Or 216, 637 P2d 143 (1981), *cert den* 457 US 1111 (1982).

■ ■　Although *Atkinson* and *Perry* involved inventory situations, we think that their holdings apply to any noninvestigative, nonemergency search, such as the search for identification of the owner of a backpack. We do not need to consider whether the first two criteria of *Atkinson* were satisfied, because we conclude that the scope of the search was unreasonable as a matter of law. Recognizing the different purposes of an inventory of personal property in police custody as a result of a detention of a person and the search for identification of the owner of personal property, such as the backpack in this case, we shall assume, without deciding, that it was reasonable for the police to open the backpack; however, *Perry* and *Ridderbush* require us to hold that it was unreasonable to open the cigarette box in a search for identification.

In our former opinion in this case, the majority wrote:

"* * * The court made no findings relating to any 'search' of the closed cigarette box, nor is any challenge made on this appeal regarding the propriety of opening that container to examine its contents. Thus, this case does not present a 'closed container' issue. * * *" 69 Or App at 232.

The trial court, in finding that defendant did not have an actual expectation of privacy which society is prepared to recognize as reasonable, ruled that the inspection of the backpack was not a "search" subject to constitutional restriction. In reaching that decision, it foreclosed discussion of whether the search was reasonable.[5] Because we hold that the search of the backpack was subject to constitutional limitations, we need to go farther than the trial court did to determine the reasonableness of the search. We now conclude

---

[5] The former majority opinion in this case misconstrued the relevance of the *Katz* test in writing:

"* * * Traditionally, a two-part 'expectation of privacy' test has been applied to determine *whether a search violates the protections of the Fourth Amendment:* (1) whether defendant had a subjective expectation of privacy in his backpack; and (2) whether that expectation is one which society is prepared to recognize as reasonable. *See Katz v. United States,* [*supra,* 389 US at 361]. This test has been applied to analyze the constitutionality of searches under Article I, section 9, as well. *See State v. Holt,* 291 Or 343, 630 P2d 854 (1981). * * *" 69 Or App at 234. (Emphasis supplied; footnote omitted.)

As noted in this opinion, the *Katz* test is applied to determine whether an action is a "search" subject to constitutional limitations, not to determine if a search is reasonable and lawful.

that defendant adequately raised the issue of the impropriety of opening the cigarette box for our consideration on this appeal. *See State v. Rounds, supra,* 69 Or App at 239 n 2 (Warren J., dissenting).

*Perry* and *Ridderbush* establish the principle that, in a noninvestigative, nonemergency situation, it is unreasonable for an officer to open a closed container. In this case, defendant, who was not suspected of a crime when the officers entered his backpack, is entitled to at least as much constitutional protection as a person charged with a crime, *State v. Ridderbush, supra,* and a person in a civil hold, *State v. Perry, supra.* Because the officer's opening the cigarette box was unreasonable, defendant's motion to suppress the evidence found therein should have been granted.

Reversed and remanded for new trial.

**ROSSMAN, J.,** dissenting.

I write separately to express my concern that the majority opinion may be interpreted as a judicial retreat from the constitutionally mandated principle of reasonableness which traditionally has applied to these kinds of cases.

In our previous opinion, we held that it was reasonable for the police officers to look in defendant's pack for identification. We also determined that defendant had not properly raised the closed container issue and, therefore, declined to address the propriety of opening the cigarette box. The Supreme Court remanded so that we could determine whether the principles enunciated for inventories in *State v. Atkinson,* 298 Or 1, 688 P2d 832 (1984), and *State v. Perry,* 298 Or 21, 688 P2d 827 (1984), have any impact on this case. Somewhere in between, this case has suddenly been transformed into a closed container case. Given the decision to move the goal posts, the majority's result is mandated by the current state of the law. The officer's conduct in looking in the cigarette box for identification would not have been reasonable. I concur to that extent.

However, I prefer to deal with this case as it was originally presented and address the issues for which it was specifically remanded to us, *i.e.,* are *Atkinson* and *Perry* applicable to the police officer's "search" of *defendant's* backpack for identification? In that regard, I disagree with the

majority's conclusion that the principles of *Atkinson* and *Perry* are necessarily applicable to this case.

Both of those Supreme Court cases clearly were limited to inventories. The majority's leap of faith ignores an obvious and crucial distinction between inventory searches and the case in question. In both *Atkinson* and *Perry,* the police were apprised of who owned the property before initiating their searches. In *Atkinson,* the officers tried to contact the owner of the vehicle before towing it away. His identity was presumably ascertained by running a check on the car's license. In *Perry,* the owner of the suitcase had been booked and was in custody. Thus, the inventory searches were conducted for the sole purpose of determining the exact makeup of the seized property.

That purpose should be contrasted with the one which prompted the officer in this case to open defendant's pack. He was called to the scene to investigate the activities of a stranger who left his backpack where he had no apparent right to do so and with no indication of when he would return. The officer testified that his only reason for looking into the pack was to find identification. He had no desire to to examine the pack's contents merely to see what it contained. There was no contrary evidence. Accordingly, his motivations were completely different than those of the officers in *Atkinson* and *Perry* and the rationale of those cases should not be applied. *State v. Ridderbush,* 71 Or App 418, 692 P2d 667 (1985), does not compel a different conclusion. Rather, a reasonableness standard, which is firmly rooted in both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, should continue to be used in cases of this type.

Under that standard, the officer was justified in looking into defendant's backpack for identification. The house where defendant left his pack in an open carport was unattended. The owner had asked a neighbor to keep an eye on it and to call the police if he saw *anyone* there. Those instructions were communicated by the neighbor to the responding officer. On the day in question, the small town of Garibaldi was in the middle of its annual "Garibaldi Days" festival. During the course of the celebration, the population

of Garibaldi swells, and the police are confronted with more trespasses than at any other time of year.

That the house belonged to defendant's grandfather is irrelevant, because that fact was known only to defendant. From an objective standpoint, the backpack was left or abandoned by an apparent stranger in an open carport where, because of express instructions, no one but the homeowner was allowed. In effect, the pack was trespassing. Rather than walk away and sanction the intrusion onto private property, the officer elected to take the pack back to the station, but first he endeavored to determine the identity of its owner so that it could eventually be returned. His actions were justified under the circumstances, and the opinion should so state.

However, if the majority is correct that *Atkinson* and *Perry* apply to all noncriminal, nonemergency situations, then a new day is indeed dawning for law enforcement officials, one in which it would no longer be enough for them to act reasonably. Their reasonable actions would have to taken pursuant to established procedures. *See State v. Atkinson, supra,* 298 Or at 10.

I assume that by established procedures, the Supreme Court meant a set of written rules covering inventories, lost or abandoned property or any other noncriminal, nonemergency situations when police officers would be justified in examining private property without a search warrant. That will place a very heavy burden on local governments throughout this state.

By requiring local governments to adopt written rules authorizing what have heretofore been constitutionally reasonable actions, they will be dealing with the very different and difficult task of legislating reasonableness. That burden would fall most heavily on smaller local agencies, which have such limited manpower and other resources to attempt such an undertaking on their own. We should point out to them that it would be to their benefit cooperatively to pursue the adoption of uniform rules. By such an endeavor, our communities will avoid the need of reinventing the wheel over and over again. It also would lend predictability and efficiency to the judicial system in that we would not be required to review dozens of sets of different rules when they are inevitably

challenged in the next generation of noncriminal, non-emergency search cases.

Richardson and Van Hoomissen, JJ., join in this dissent.