Lebanon District Court
No. 94-064

## THE STATE OF NEW HAMPSHIRE

### v.

### DANIEL WESTOVER

October 31, 1995

*Jeffrey R. Howard*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, and *Joachim Barth*, assistant appellate defender, of Concord, (*Mr. Barth* on the brief, and *Mr. Barth* and *Mr. Duggan* orally), for the defendant.

BROCK, C.J. The defendant, Daniel Westover, was convicted in the Lebanon District Court (*Cirone*, J.) of possession of a controlled drug, RSA 318-B:2 (Supp. 1994), a class B misdemeanor. The defendant appeals his conviction, arguing that evidence presented at trial should have been suppressed. This case also presents the question whether an indigent defendant, convicted of a class B misdemeanor without the possibility of imprisonment, is entitled to have counsel appointed on appeal. We reverse and remand.

On January 6, 1993, an individual entered the Canaan Police Department and informed Lieutenant Kevin Copp that Daniel "Chipper" Westover, Robert "Icky" Kendall, Jr., and another individual were in a car at the Mascoma Savings Bank and were rolling a marijuana cigarette. Meanwhile, Chief Jonathan Putnam of the Canaan Police had already spotted the car and had determined to stop it because it did not have a proper inspection sticker and "looked like an absolute piece of junk." Before Chief Putnam had an opportunity to stop it, however, the uninspected vehicle pulled into the Mascoma Savings Bank. In an effort to prevent traffic congestion at the bank, Chief Putnam decided to wait across the street for the vehicle to return to the road.

While waiting, Chief Putnam communicated by radio with Lieutenant Copp, who informed him of the report he had received. The vehicle eventually left the bank and turned into Evans Fuel Mart, where Chief Putnam pulled in behind it. Lieutenant Copp also arrived at the scene. After Lieutenant Copp had spoken with the driver, Robert Kendall, for a short time, the defendant, who was in the passenger seat, asked whether he could exit the vehicle. The police told him he could, and he got out, carrying a crumpled piece of gray material. It was later determined that this material comprised a sweatshirt and a T-shirt.

The defendant walked from the car toward the store at Evans Fuel Mart. Chief Putnam observed the defendant "gently" throw what he was carrying, in an underhand fashion, to the ground, before entering the store. Chief Putnam walked over to the clump of material the defendant had left outside, kicked it aside and discovered what he recognized to be a marijuana pipe and a bag of marijuana. The defendant was arrested and charged with possession of a controlled drug.

■ On appeal, the defendant first argues that he has a right to have counsel appointed for his class B misdemeanor appeal. The maximum fine for the offense set by the legislature is $1,200, RSA 651:2, IV(a) (Supp. 1994), without the possibility of imprisonment, RSA 651:2, III (Supp. 1994). The defendant relies on the due process and equal protection guarantees of the State and Federal Constitutions. See N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV. We hold that the defendant does not have a right to appointed counsel.

As is our duty, we begin with an analysis under our State Constitution. State v. Ball, 124 N.H. 226, 232, 471 A.2d 347, 350 (1983). We look to the decisions of other jurisdictions for assistance in resolving the State constitutional issues before us. See State v. Maya, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985).

The defendant clearly can find no support in that portion of part I, article 15 which provides: "Every person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown." N.H. CONST. pt. I, art. 15; see State v. Cook, 125 N.H. 452, 455, 481 A.2d 823, 825 (1984). Therefore, as to due process, he is left with recourse only to the general due process principles embodied in part I, article 15.

In Argersinger v. Hamlin, 407 U.S. 25, 40 (1972), the Supreme Court held that, when an indigent criminal defendant's liberty is at stake, "the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy." Accordingly, in Scott v. Illinois, 440 U.S. 367, 369 (1979), the Court held that an indigent defendant whose liberty has not been compromised has no right to appointed counsel. This distinction is drawn because "any deprivation of liberty is a serious matter," Argersinger, 407 U.S. at 41 (Burger, C.J., concurring), and "as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel," Lassiter v. Department of Social Services, 452 U.S. 18, 26 (1981).

The Supreme Court has also addressed the right to counsel in criminal appeals. In Douglas v. California, 372 U.S. 353, 355 (1963), the Court held that the indigent defendant, sentenced to imprison-

ment, should have had counsel appointed on appeal. The Court has also held, however, that some defendants have no right to appointed counsel on appeal. *Ross v. Moffitt*, 417 U.S. 600, 618–19 (1974). The Court in *Ross* distinguished *Douglas* on the basis that *Douglas* involved the defendant's first appeal as of right, while *Ross* involved a second, discretionary appeal. *Id.* at 614–15. The Supreme Court, therefore, has not directly considered whether indigent defendants, faced with no deprivation of liberty, are entitled to appointed counsel on appeal.

■ The *Ross* Court, however, did rely on the differences between trial and appeal in reaching its decision. The Court found these differences to be significant because, "while no one would agree that the State may simply dispense with the trial stage of proceedings without a criminal defendant's consent, it is clear that the State need not provide any appeal at all." *Id.* at 611. We conclude that, because a defendant facing no loss of liberty does not have a right to appointed counsel at trial, he does not have such a right at the appellate level, where the constitutional concerns are lessened. *See id.* at 610–11.

■ The right to counsel at trial under the Federal Constitution is derived generally from the sixth amendment. The defendant argues that the right to *appointed* counsel he asserts is not to be determined by sixth amendment jurisprudence; rather, it arises from due process and equal protection guarantees, which provide a broader right to counsel. We disagree that there is a broader right under these constitutional guarantees. The Supreme Court has explicitly recognized that the rights at issue in *Douglas* and *Ross* were derived from the fourteenth amendment's due process and equal protection clauses. *E.g., Evitts v. Lucey*, 469 U.S. 387, 403 (1985). So too is our decision today based on due process and equal protection principles embodied in the New Hampshire Constitution. As one court has stated, "While violations of an accused's right to counsel are encompassed within the concept of due process, the due process clauses [of the fifth and fourteenth amendments] neither expand nor contract the constitutional protection provided by the Sixth Amendment right to counsel." *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 246 (2d Cir. 1985), *cert. denied*, 475 U.S. 1108 (1986).

In *Douglas*, the Court recognized that "a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of due process or an invidious discrimination." *Douglas*, 372 U.S. at 356 (quotation omitted). For the above reasons, this is such an instance.

Although our decision is based upon the New Hampshire Constitution, our thorough consideration of federal precedent in reaching our conclusion manifests that the United States Constitution provides no greater protection. *See Michigan v. Long*, 463 U.S. 1032, 1041 (1983); *State v. Cooper*, 127 N.H. 119, 129, 498 A.2d 1209, 1216 (1985).

We now turn to the evidentiary issue. The defendant argues that the marijuana should have been suppressed because the warrantless search of his sweatshirt violated part I, article 19 of the New Hampshire Constitution. The State counters that the defendant had abandoned his sweatshirt and the warrantless search was therefore constitutional. *See State v. Jarret*, 116 N.H. 590, 364 A.2d 624 (1976). The State bears the burden of proving by a preponderance of the evidence that a warrantless search was constitutionally permissible. *State v. Theodosopoulos*, 119 N.H. 573, 578, 409 A.2d 1134, 1137 (1979), *cert. denied*, 446 U.S. 983 (1980).

We base our decision on State constitutional law and need not address issues under the Federal Constitution because the defendant's rights are fully protected under part I, article 19 of the New Hampshire Constitution. *See Ball*, 124 N.H. at 232, 471 A.2d at 350. Many jurisdictions approach searches ostensibly justified on abandonment grounds under the expectation of privacy analysis first articulated in *Katz v. United States*, 389 U.S. 347, 361 (1967) (*Harlan*, J., concurring). *E.g.*, *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.), *cert. denied*, 464 U.S. 859 (1983). This court, however, has not adopted this test under part I, article 19 of the State Constitution. *State v. Sterndale*, 139 N.H. 445, 449, 656 A.2d 409, 411 (1995).

The Court of Appeals of Oregon, interpreting a provision of the Oregon Constitution similar to part I, article 19 of the New Hampshire Constitution, held that an expectation of privacy analysis was unnecessary where police action involved "a physical trespass to a personal effect expressly entitled to constitutional protection." *State v. Rounds*, 698 P.2d 71, 73 (Or. Ct. App. 1985). We need not decide whether an expectation of privacy analysis is appropriate in other circumstances because the defendant's clothing is certainly protected by his "right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19; *see Rounds*, 698 P.2d at 73.

When a person abandons a possession, however, he or she gives up the right to be secure from unreasonable searches of that possession. *Jarret*, 116 N.H. at 590, 364 A.2d at 625.

> Whether property has been abandoned is generally a question of fact based upon evidence of a combination of act and intent. Intention is a prime factor in considering whether there has been an abandonment; it is to be ascertained from what the actor said and did since intent, although subjective, is determined from objective facts at hand.

*Morton v. State*, 397 A.2d 1385, 1388-89 (Md. 1979) (quotation and citation omitted). Also relevant to a determination of abandonment are "where and for what length of time the property is relinquished and the condition of the property." *O'Shaughnessy v. State*, 420 So. 2d 377, 379 (Fla. Dist. Ct. App. 1982).

To prove abandonment, the State relies, in part, on an inference that the defendant was "trying to disassociate himself from the contraband" and therefore intended to abandon his sweatshirt. "The insidiousness of this suggestion is that an intent to abandon can be inferred in every case where the ultimate search turns up incriminating evidence, as unpalatable a proposition as that a search can be justified by what it uncovers." *Id.* at 378.

■ Whether property has been abandoned is generally a question of fact. *Morton*, 397 A.2d at 1388-89. Therefore, the factfinder's findings on abandonment will be upheld unless clearly erroneous. *See State v. Conant*, 139 N.H. 728, 730, 662 A.2d 283, 285 (1995). The trial court found that the defendant had temporarily abandoned his property. While the possibility of a generalized intent to return to the property at some time does not *per se* preclude a finding of abandonment, *see United States v. Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989), there must be a significant dissociation of the property from the defendant for a finding of abandonment, *see generally* 1 W. LAFAVE, SEARCH AND SEIZURE § 2.6(b) (1987 & Supp. 1995). "Temporary abandonment," therefore, is not a valid general exception to the warrant requirement.

■■ The trial court also found that the defendant did not intend to abandon his property permanently. We agree. The defendant took his sweatshirt with him from the car. He gently tossed it aside as he entered the store. Moments later, with the defendant having said or done nothing more, the police searched his sweatshirt. These facts support the conclusion that the defendant did not abandon his property. *Accord Kelly v. State*, 536 So. 2d 1113, 1114 (Fla. Dist. Ct. App. 1988) (police searched backpack minutes after defendant left and nothing suggested defendant would not soon return); *Morton*, 397 A.2d at 1390 (lying to police officer and "brief relinquishment of

possession" insufficient to show abandonment). The evidence obtained through the search of the defendant's sweatshirt should have been suppressed.

*Reversed and remanded.*

BATCHELDER, J., concurred; JOHNSON, J., concurred specially; THAYER, J., with whom HORTON, J., joined, dissented.

JOHNSON, J., concurring specially: I join the majority opinion but write separately to emphasize my reasons for concluding that the defendant did not intend to permanently abandon his property. Therefore, the search of the defendant's sweatshirt was unreasonable, and the evidence obtained from that search should be suppressed.

"Under the New Hampshire Constitution, all warrantless searches are *per se* unreasonable, unless they conform to the narrow confines of a judicially recognized exception." *State v. Sterndale*, 139 N.H. 445, 447, 656 A.2d 409, 410 (1995); *see* N.H. CONST. pt. I, art. 19. The burden is on the State to prove by a preponderance of the evidence that the warrantless search was justified. *State v. Gallant*, 133 N.H. 138, 146, 574 A.2d 385, 391 (1990). The trial court found that the "State presented no substantive evidence that the defendant intended to permanently discard his sweatshirt." We will not disturb the lower court finding of fact unless it is clearly erroneous. *See State v. Brown*, 138 N.H. 407, 409, 640 A.2d 286, 287 (1994).

The test for whether an individual has abandoned property involves a "focus on the intent of the person who is alleged to have abandoned the place or object. . . . The test is an objective one, and intent may be inferred from words spoken, acts done, and other objective facts." *United States v. Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989) (citations and quotation omitted).

I agree with the majority and the trial court that the objective facts in this case are insufficient to show by a preponderance of the evidence that the defendant intended to permanently abandon the sweatshirt. The record indicates that the defendant tossed the sweatshirt aside as he was entering Evans Fuel Mart. It is entirely unclear whether he meant to abandon this property or to reclaim it when he subsequently exited the fuel mart. We will never know this critical fact as the police commenced their warrantless search immediately upon the defendant entering the convenience store. The trial court, in finding temporary abandonment, emphasized that the defendant left the sweatshirt in a public place where it was subject to theft or damage. However, "the mere fact that the property was placed in an area open to the general public is not

sufficient to establish abandonment. The evidence must also *clearly demonstrate* that the individual attempted to dissociate himself from the property." *Commonwealth v. Johnson*, 636 A.2d 656, 659 (Pa. Super. Ct. 1994) (emphasis added) (finding abandonment where the defendant had placed a plastic bag containing crack cocaine "up into [a] tree" in a public park where a police officer seized it).

Other evidence emphasized by the dissent does not indicate such clear disassociation as to justify the conclusion that the trial court was incorrect in finding there was no permanent abandonment. Though the defendant tossed the sweatshirt forty feet from the entry to the store, if he had wanted to definitively rid himself of this clothing, he could have placed it in a nearby dumpster.

The dissent correctly states that many courts find property has been abandoned when a defendant discards it temporarily in order to conceal incriminating evidence from police. In *United States v. Williams*, 569 F.2d 823 (5th Cir. 1978), for example, the defendant unhooked a "large tractor-trailer rig" containing 179 pounds of marijuana at a rest stop north of Amarillo, Texas after he discovered he was being followed by federal agents. He then proceeded back on the highway. *Id.* at 824. The facts in *Williams*, however, more easily support the finding of abandonment in an attempt to escape police detection than do those in the present case. Though the trial court found that the defendant "purposely intended to hide the sweatshirt" in order to escape police detection, I am not convinced that at the *time of the search in this case* there was sufficient evidence to indicate that disassociation was the defendant's intent. Here, the defendant tossed aside "gray material" while entering a convenience store. If the defendant had exited the fuel mart without retrieving his sweatshirt or had given a stronger indication of abandonment, then *Williams* may have been apposite.

This is arguably a close case; however, the State simply has failed to meet its burden of proving by a preponderance of the evidence that the defendant intended to permanently abandon the sweatshirt. I therefore concur with the majority opinion.

THAYER, J., dissenting: I respectfully dissent from the second part of the majority's opinion. I would hold that the defendant abandoned his sweatshirt and drugs when he dissociated himself from them by tossing them aside before entering the Evans Fuel Mart. As a result, the search of his sweatshirt did not violate part I, article 19 of the New Hampshire Constitution. For that reason, I would affirm the decision of the Lebanon District Court (*Cirone*, J.).

When the police stopped Robert Kendall's car, the defendant was seated in the passenger seat. He requested permission to leave the

car when the police asked Kendall if they could conduct a search of the vehicle. The defendant got out of the car, reached back inside to retrieve the sweatshirt concealing marijuana, and then walked in the general direction of the Evans Fuel Mart. He tossed the sweatshirt and the marijuana aside, about forty feet from the front of the fuel mart, and then walked into the store. The sweatshirt containing the drugs landed in a remote area, approximately fifteen to twenty-five feet from a garbage dumpster. The drugs remained hidden from view by the sweatshirt.

On the basis of those facts, the district court reached two conclusions. First, it concluded that the defendant abandoned his property. It noted that the defendant dropped his sweatshirt and the marijuana in order to hide the illegal contraband from the police and reasoned that such behavior amounted to abandonment. Second, the district court concluded that the defendant intended to return to his sweatshirt when the police left the area. Therefore, the abandonment was only temporary.

The record offers strong support for the district court's first conclusion. The objective facts prove that the defendant tossed his property aside in order to hide it from the police. More importantly, however, the record reveals that in hiding his property the defendant was attempting to dissociate himself from its illegal contents, hoping that the police would not find the drugs, or, if they did, that they would not link the drugs to him.

Courts regularly conclude that a defendant "abandons" property when he takes steps to dissociate himself from it in an effort to avoid police detection. *E.g.*, *United States v. Thomas*, 864 F.2d 843, 846 (D.C. Cir. 1989); *United States v. Williams*, 569 F.2d 823, 826 (5th Cir. 1978); *In re Baraka H.*, 8 Cal. Rptr. 2d 221, 226 (Ct. App. 1992); *Commonwealth v. Johnson*, 636 A.2d 656, 659 (Pa. Super. Ct.), *appeal denied*, 651 A.2d 534 (Pa. 1994). They reason that the defendant is disclaiming ownership of the property to avoid being caught and that such conduct amounts to abandonment. While the defendant might want to retrieve the property if the police do not discover it, he has no more than a hope that it will still be there when he returns. *Williams*, 569 F.2d at 826.

*Williams* is a good example of this approach. In *Williams* the defendant left a trailer containing drugs in a highway rest stop after being told that agents from the drug enforcement administration (DEA) might be following him. *Id.* at 824. After the defendant left the trailer, DEA agents searched it and found marijuana. *Id.* at 825. The Fifth Circuit ruled that the defendant had abandoned the trailer and therefore that the warrantless search was reasonable.

*Id.* at 826. The court emphasized that the defendant was trying to distance himself from the marijuana in the event that DEA agents approached him. *Id.* It concluded that such behavior amounted to abandonment:

> [The defendant] knew he was followed by government officers. His only conceivable purpose in leaving the trailer . . . was to rid himself of the vehicle with its incriminating contents. Perhaps, he retained a hope that he might accomplish two objects: the protection of himself from possession of evidence while he was pursued, and the chance of recovery of the trailer if neither the officers nor anyone else took it. . . . Such conduct is transparently an abandonment of the tight grip of ownership and reliance solely on the feeble hope of re-acquisition.

*Id.*

Similar reasoning should control this case. As in *Williams*, the defendant's actions here indicate that he was trying to distance himself from the sweatshirt and the marijuana during the time he was a potential target of police questioning. He intended to disclaim ownership of his property, *i.e.*, abandon it, in order to protect himself. The possibility that the defendant might be able to retrieve his property in the future does not prove that he intended, at the time he tossed it aside, to maintain an interest in it. At best, he retained a "feeble hope of re-acquisition." *Id.*

The majority opinion takes a different approach, one which reflects an unreasonably narrow definition of abandonment. Rather than focus on all the facts in this case, the majority emphasizes only those facts which it believes demonstrate that the defendant intended to reclaim his property. Noting that there is no such thing as "temporary abandonment," the majority then points to those facts and concludes that the defendant did not intend to abandon his sweatshirt or his drugs. While I agree that the defendant retained the hope of returning to claim the contraband if it went undetected, that fact does not affect the defendant's intent to distance himself from the drugs at the time he threw them away, which, under the cases cited above, is sufficient to meet the definition of abandonment. Therefore, like the district court, I would take into account all the facts in this case and reach a different result.

In addition, I believe the facts found by the trial court prove the defendant abandoned his property. The majority cites two facts to bolster its contrary conclusion. First, it points out that the defendant gently tossed his sweatshirt and marijuana aside before entering the store. The majority apparently infers that the defen-

dant used care when tossing his sweatshirt because he planned to retrieve it in the future, suggesting that he did not intend to abandon it.

But isolating the gentle nature of the defendant's toss ignores the context in which the defendant acted. The defendant removed his drugs from the car only after police received permission to conduct a search. In light of the police search, the only reasonable conclusion is that the defendant exercised care in tossing the sweatshirt aside so that the marijuana would stay covered, invisible to the police officers in the area. The gentle toss suggests that the defendant exercised care only in an effort to avoid detection.

Second, the majority emphasizes that the police searched the sweatshirt immediately. The majority implies that the police did not give the defendant a chance to return and claim the sweatshirt, making a finding of permanent abandonment impossible. While the majority is correct that if the police had waited to conduct a search there would be more evidence on the issue of abandonment, I do not believe any additional evidence is needed. The existing evidence convinces me that the defendant intended to abandon the sweatshirt and the drugs. First, the defendant retrieved his sweatshirt and then tossed it away only after police indicated that they were going to conduct a search. Since the defendant was responding to the search, a reasonable conclusion is that the defendant intended to dissociate himself from the drugs and abandoned his property. Second, the defendant disposed of the sweatshirt more than forty feet from his destination, an unlikely spot if he simply wanted to set it down while he went into the fuel mart. Finally, the defendant placed his sweatshirt in a remote area only fifteen feet away from a dumpster. If he had wanted to reclaim his property, he likely would have left it in an area less apt to be seen by others as containing discarded property.

The cases cited by the majority do not support its ruling. The majority relies heavily on *Morton v. State*, 397 A.2d 1385 (Md. 1979). In that case, the police suspected the defendant of robbery. *Id.* at 1387. They followed him into a recreation center, confronted him, and then asked that he accompany them outside. *Id.* When the officers told the defendant to bring a black leather jacket they had seen him wearing, the defendant responded that he had given the jacket to a cousin. *Id.* Not believing the defendant, the police searched the recreation center, found the jacket, and then searched the jacket pockets. *Id.* They found a gun and some drugs.

The court ruled that the defendant had not abandoned the jacket and, therefore, that the warrantless search was unreasonable. *Id.* at

1389. The court emphasized that the defendant did not lose his expectation of privacy in the jacket just because he placed it in the recreation center. *Id.* at 1390.

*Morton* is easily distinguished from the instant case. In a recreation center, people toss their jackets aside with the specific intent of picking them up when they leave the building. I cannot draw the same conclusion about clothing left in a remote area, forty feet from the entrance to a fuel mart.

The majority also relies on *Kelly v. State*, 536 So. 2d 1113 (Fla. Dist. Ct. App. 1988). In that case, a police officer approached a group of people standing in a restaurant parking lot. *Id.* at 1113. The defendant was one member of the group and the officer recognized him from an encounter several nights earlier. As the officer approached, the defendant got into a car and drove off. *Id.* The officer asked the remaining group members about the defendant. They informed him that the defendant owned a bicycle parked nearby. The officer searched a backpack attached to the bicycle and found what he believed were drugs. *Id.* Based on that search, the officer arrested the defendant a few minutes later. *Id.*

Acknowledging that the case was a close one, the court concluded that the defendant had not abandoned the bicycle. *Id.* at 1114–15. The court reasoned that the defendant left the bicycle with friends, suggesting that he intended to return to it. *Id.* Unlike the defendant in *Kelly*, the defendant here did not leave his sweatshirt with friends. That fact alone distinguishes the two cases and supports a different result here.

In short, I believe that the defendant's objective actions indicate that he intended to dissociate himself from his sweatshirt and marijuana, hoping that the police would not find the drugs, or, if they did, that they would not link the drugs to him. His intent was to abandon his property, even though he may have hoped to retrieve both the sweatshirt and the drugs after the police left the area. Accordingly, I would affirm the decision of the district court and hold that the search did not violate the State Constitution.

HORTON, J., joins in the dissent.